## AUTOMATIC RECORDING SAFE CO. v. BURNS CO.

(District Court, S. D. New York. May 21, 1914.)

PATENTS ⊚⟶328—VALIDITY AND INFRINGEMENT—RECORDING SAFE FOR COINS.
The Thompson patent, No. 758,340, claim 4, and the Fisher patent, No. 793,779, claim 5, both for a recording safe or bank for holding coins, *held* not so clearly infringed as to warrant the granting of a preliminary injunction, but claim 8 of the latter patent *held* valid and infringed.

In Equity. Suit by the Automatic Recording Safe Company against the Burns Company. On motion for preliminary injunction. Motion granted.

John H. Lee, of Chicago, Ill., and Hillary C. Messimer, of New York City, for complainant.

Harvey L. Hanson and Arthur H. Boettcher, of Chicago, Ill., for defendant.

MAYER, District Judge. The bill charges infringement of five of complainant's patents, to wit: Claim 4 of Thompson patent, No. 758,-340; all claims of Fisher patent, No. 793,779; claim 7 of Fisher patent, No. 990,534; claim 6 of Fisher patent, No. 990,535; claims 1, 2 and 5, of Fisher patent, No. 1,073,847. The motion is for a preliminary injunction, and is confined to claim 4 of the Thompson patent, claims 5, 6, 7, and 8 of the main Fisher patent, and the claims mentioned of the later Fisher patents.

The motion was fully argued, and I see no reason to change the view tentatively expressed by me on the argument, as to the two later Fisher patents and claims 6 and 7 of the main Fisher patent. As to these I repeat that my doubt is such as to preclude the granting of a motion for a preliminary injunction. There are thus to be considered claim 4 of the Thompson patent and claims 5 and 8 of the main Fisher patent.

The Thompson patent is 10 years old and the first Fisher patent is nearly 9 years old, and the alleged infringing device has only recently been placed on the market. The art is that which deals with small automatic recording savings banks of a character which enables the depositor to put his coins through the slots, these coins stacking up in an appropriate compartment, and the depositor then taking this small bank to the appropriate officer of the savings bank, the small bank being unlocked, the savings readily taken out and counted, and the bank returned to the depositor in the hope that he will again save his nickels and dimes.

The complainant's bank has evidently proved a great commercial success, and complainant has established a large and widespread business for the sale of its bank. The complainant's commercial structure is oval in shape, having compartments for cents, nickels, dimes, quarters, and halves, and having a hole at the bottom through which a bill may be placed, but which last-named feature is not important as to the

claims left in the case, and appears to me not to be practicable for the purpose desired.

The Thompson patent was for a savings banks recording device, but the receptacles for the coins were so arranged within the casing that it was necessary for the teller to dump (if I may use the word) the coins on his table, and thus necessitate a separation, and possibly a recounting.

The main advance, speaking practically, in the first Fisher patent, was in organizing a mechanical construction, whereby a readily removable casing inclosed or surrounded a core with coin compartments, so that the device worked successfully, on the one hand, as a means for inserting the coins and recording the same, and, on the other hand, for lifting the cover or casing without disturbing the coin compartments, and thus enabling the teller to take out the coins quickly and conveniently from their respective compartments. I think that the Thompson patent may be valid; but, if valid, it represents an advance over the prior art so narrow that its claim 4 must be strictly construed. That claim is as follows:

"In a savings bank, the combination, with a case, of a plurality of receptacles located within said case, said case having horizontal slots through the vertical wall thereof near its top registering with openings communicating with the individual receptacles through which coins may be inserted, a plate located above the tops of said receptacles, and projections depending from said plate into the open upper ends of said receptacles and extending below the horizontal planes of the openings leading thereinto."

Without elaborating, I may point out that the coin compartments in the Thompson structure are in the form of complete tubes, which construction is not found in defendant's device. In any event, the alleged infringement of claim 4 of the Thompson patent is not of that clear and convincing character which will warrant the granting of a preliminary injunction.

The main Fisher patent, however, embodies a thought (worked out in a commercial structure) which marks a real advance in the art. It is true that certain elements are found in the prior art, and that the art is narrow, but the method employed and the results attained are sufficiently novel to find invention. Although the invention is simple, one is moved to ask the time-worn question as to why, in an article in regard to which a number of inventors had been experimenting, a contrivance that seems so simple now was not previously worked out.

It is highly important, in considering a device so simple in construction that any intelligent man can understand it by ocular demonstration, that the mind should not be led astray by the mere fact that the invention now seems obvious. If any doubt as to invention existed (and I entertain none), then the unquestioned commercial utility of the article would resolve that doubt in favor of the patent.

As I view it, the real questions in controversy are whether claims 5 and 8 are infringed in defendant's structure. As regards claim 5, defendant calls attention to the limitation:

"The distance between the flanges of each compartment being greater than the diameter of the coins to be received by such compartment."

On first impression defendant's position seemed highly technical, but an examination of the file wrapper demonstrates that the point is one which may be seriously considered. In amending claims 1, 2, 3, 4, and 7 (now 5), the applicant stated by his attorneys:

"Claims 1, 2, 3, 4, and 7 have been amended to more clearly distinguish applicant's invention from the prior art, by setting forth the fact that the distance between the outer edges of the adjacent flanges is greater than the diameters of the coins to be received in the compartment between such flanges. This feature facilitates the counting of the contents of the bank inasmuch as the cover may be removed, leaving the core with all of the coins contained in the bank, stacked within the compartments, from which the coins may be readily removed by the teller in counting the same. In the bank of Young it is necessary that the coins should be removed from the bank before they can be counted, thereby necessitating the coins being assorted in separate denominations prior to counting."

Claim 5, as originally presented, did not contain the limitation as to the distance between the flanges and was rejected by the Patent Office, and was finally allowed only after this limitation was inserted. A flange has been defined as "a projecting large rim, or rib," and when the purpose for which this limitation was inserted is understood, then its importance can be realized. In view of the contents of the file wrapper, and the wording of the other claims read in connection with the context, the contention that claim 5 in this respect means the same as claims 2, 3, and 4 is serious enough to create a doubt. I think, therefore, in respect of this claim, that the question of infringement is not so clear and convincing as to justify the granting of a preliminary injunction.

Claim 8 reads as follows:

"8. In a savings bank, the combination, with a base, of a plurality of vertical flanges supported above the base and spaced apart to form compartments for the coins, a cover comprising a surrounding side wall and top wall united thereto, said cover adapted to inclose the base and the flanges thereon, and a lock secured to the under side of said top the bolt of which engages a slot in one of the walls between the inner edges of the two adjacent flanges."

This claim reads literally on defendant's structure. Here the defendant's contention narrows down to the proposition that the lock slot in the upper portion of the core of defendant's structure is not in "one of the walls between the inner edges of the two adjacent flanges." I agree with complainant that this contention has no merit. The best that can be said for defendant's structure is that an equivalent has been used in the locking means, and not to find infringement would be to deprive the owner of the patent of the just results of the invention on an indefensibly narrow construction of the language of the claim. I am fully convinced that claim 8 is infringed by defendant's structure.

The question is whether the injunction, which must follow from this conclusion, shall be suspended in view of the approaching summer vacation. The entrance of defendant into this field has been recent, and occurred after complainant had created a market and made a price for its goods. The advertisements, Complainant's Exhibits D and E, are persuasive with me, in addition to other facts set forth in the affidavit, that injury of a grave character may result to complainant if

defendant can impair the market as against complainant. In such a situation, it may very well happen that, if complainant prevails at final hearing, it nevertheless may not be able to restore or sustain prices, and may find the market for its product affected in such manner and to such degree that unnecessary time and money will be required to put complainant back to the position which is justly its own if the patent is valid and infringed.

I have less hesitation than usual in this case, because an injunction will not interfere with an existing industry, nor, for the time being, throw any persons out of work. The defendant, as I view it, took the chance (as it had the right to do) that the technique involved might avoid the patent.

The patent is simple, and on final hearing there should not be any difficulty in trying the case in a short space of time. That being so, I think a preference will not be unfair to other litigants whose cases are on the equity calendar, and, as an order for preliminary injunction will be made, I have concluded to allow this cause a preference by setting it down for the day calendar in October, 1914.

I have been conservative in my expressions of opinion, for the reason that I desire not to embarrass the presentation on final hearing, either in Illinois or here.

Settle order on three days' notice.